IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JOE RICHARD RANDLE | § | |
| v. | § | CIVIL ACTION NO. 6:05cv454 |
| WESLEY PRATT, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

  The Plaintiff Joe Richard Randle, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

  The Magistrate Judge conducted an evidentiary hearing on July 5, 2006. After review of the pleadings and evidence in the case, the Magistrate Judge issued a Report recommending dismissal of all of the claims and parties except for Randle's claims against Lt. Doyle Wood. Randle asserted that on September 9, 2005, Wood told him that he, Randle, was "a troublemaker and a smartass," and that he would be placed in a regular work squad regardless of his medical classification. Four days later, Randle said, on September 13, he was called to the gym to go to work. He presented copies of his work restrictions and said that he had a gunshot wound in his neck, but Wood replied that he knew Randle's restrictions and that Randle was going to go to work or he would be locked up in pre-hearing detention.

  Randle stated that Wood verbally abused him and ordered to pull a box over to him. Randle refused, but Wood cursed at him and threatened him. Randle then complied with the order,

1

but while pulling the box, he felt a tear and then a burning sensation in his face, as well as numbness in his right arm and pain in his groin. When Wood saw the expression on Randle's face, he told Randle that he was "just a snitch" and to "get out of here." Randle returned to the building and told Sgt. Kelly, and he was sent to the infirmary, where he was told to return later that night. When Randle did so, he received a sling and some pain medication, as well as a lay-in to see a medical provider on September 14.

The Court ordered Lt. Wood to answer, and an answer was filed. On March 9, 2007, Wood filed a motion for summary judgment, asserting failure to exhaust administrative remedies, Eleventh Amendment immunity, qualified immunity, failure to show deliberate indifference, and failure to show retaliation. Randle filed a response to this motion.

After review of the pleadings in the case, the motion for summary judgment, the response thereto, and the competent summary judgment evidence, the Magistrate Judge issued a Report on July 9, 2007, recommending that Wood's motion for summary judgment be granted. In this Report, the Magistrate Judge first set out the facts of the case and the prevailing standards for summary judgment.

Turning to the case at hand, the Magistrate Judge considered the Defendant's claim that Randle had failed to exhaust his administrative remedies. Of all of the grievances filed by Randle between August and November of 2005, only one, no. 2006006176, concerned Randle's complaints about his September job assignment and his medical restrictions. The Step One grievance was dated September 9, 2005, and primarily concerned issues which Randle had with a sergeant named Hill. The Step Two grievance, which was dated October 17, 2005, was the first grievance in which Randle's claims against Lt. Wood were expressed, over 30 days after the incident occurred; Randle never filed a Step One grievance against Wood.

In his motion for summary judgment, Wood argued that this was improper exhaustion for two reasons. First, Randle did not follow TDCJ rules requiring the presenting of one issue per grievance, in that he complained of one incident in his September 9 Step One grievance, and then

2

added new allegations, over incidents occurring on a different day, in his Step Two grievance. The Defendant argues that these are entirely separate issues which could and should have been separately grieved.

Second, the Defendant says that Randle used the Step Two grievance, which is an appeal of the Step One disposition, to raise new claims not presented in his Step One grievance. This allowed him to "coat-tail" claims which otherwise would have been untimely. Under prison rules, inmates have 15 days in which to file Step One grievances complaining of incidents, but in this case, Randle waited over a month and then did not file a Step One grievance at all, but added new issues to a Step Two appeal, which issues had not been presented at Step One. Wood says that this in effect converted his Step Two appeal into an untimely Step One grievance and thereby circumvented the 15-day rule, as well as the rule prohibiting the filing of more than one issue per grievance. Wood says that Randle could simply have filed a Step One grievance complaining of Wood's alleged actions within 15 days of September 13, 2005, but failed to do so, and consequently did not exhaust his administrative remedies.

In response, Randle argued that he satisfied the exhaustion requirement because he filed all of his grievances "under life endangerment status," which status mandates that grievances be investigated within 48 hours. He says that an affidavit from a grievance officer which was attached to the motion for summary judgment says that he filed eight grievances which were returned unprocessed, so he can go to Step Two. He also pointed out that at the Spears hearing, TDCJ grievance coordinator Chip Satterwhite stated that Randle had exhausted his administrative remedies.

The Magistrate Judge noted that the affidavit mentioned by Randle says that between June of 2005 and January of 2006, eight grievances were returned to Randle unprocessed. The return of grievances without processing means that the grievance was improperly submitted for one of various reasons.


added new allegations, over incidents occurring on a different day, in his Step Two grievance. The Defendant argues that these are entirely separate issues which could and should have been separately grieved.

Second, the Defendant says that Randle used the Step Two grievance, which is an appeal of the Step One disposition, to raise new claims not presented in his Step One grievance. This allowed him to "coat-tail" claims which otherwise would have been untimely. Under prison rules, inmates have 15 days in which to file Step One grievances complaining of incidents, but in this case, Randle waited over a month and then did not file a Step One grievance at all, but added new issues to a Step Two appeal, which issues had not been presented at Step One. Wood says that this in effect converted his Step Two appeal into an untimely Step One grievance and thereby circumvented the 15-day rule, as well as the rule prohibiting the filing of more than one issue per grievance. Wood says that Randle could simply have filed a Step One grievance complaining of Wood's alleged actions within 15 days of September 13, 2005, but failed to do so, and consequently did not exhaust his administrative remedies.

In response, Randle argued that he satisfied the exhaustion requirement because he filed all of his grievances "under life endangerment status," which status mandates that grievances be investigated within 48 hours. He says that an affidavit from a grievance officer which was attached to the motion for summary judgment says that he filed eight grievances which were returned unprocessed, so he can go to Step Two. He also pointed out that at the *Spears* hearing, TDCJ grievance coordinator Chip Satterwhite stated that Randle had exhausted his administrative remedies.

The Magistrate Judge noted that the affidavit mentioned by Randle says that between June of 2005 and January of 2006, eight grievances were returned to Randle unprocessed. The return of grievances without processing means that the grievance was improperly submitted for one of various reasons.

In <u>Woodford v. Ngo</u>, 126 S.Ct. 2378, 2388 (2006), the Supreme Court held that prisoners must complete the exhaustion procedures in accordance with the applicable state procedural rules, including deadlines, because the benefits of exhaustion can only be realized if the prison grievance system is given a fair opportunity to consider the grievance, and the system will not have such an opportunity unless the grievant complies with the procedural rules.

The Magistrate Judge concluded that Randle failed to exhaust his administrative remedies because he did not comply with TDCJ procedural rules. Randle first raised his specific claims against Wood in a Step Two appeal, of which the original Step One was filed before the incident with Wood had occurred. This Step One grievance had complained about Sgt. Hill, and so the Step Two added new claims, against Lt. Wood, in violation of a procedural rule requiring the presenting of only one claim per grievance. Furthermore, the Step Two grievance was filed over 30 days after the incident with Wood had occurred, which violated the rule requiring that issues be raised within 15 days of their occurrence. As the Defendant pointed out, Randle could have complied with the rules simply by filing a new Step One grievance, specifically complaining about the September 13 incident with Wood, within 15 days of that incident taking place.

Although Randle asserted that he had satisfied the exhaustion requirement because he filed all of his grievances under "life endangerment status," which he says required that his grievances be investigated within 48 hours, the Magistrate Judge noted that this argument failed to show why Randle raised a new issue in a Step Two appeal rather than filing a timely and proper Step One grievance. Additionally, Randle's contention that his grievance was filed under "life endangerment status" failed to explain why he waited over a month before first raising the issue in a grievance. His Step Two appeal was untimely and improperly raised new issues regardless of whether or not prison officials had 48 hours in which to investigate. In addition, the Magistrate Judge said, the text of Randle's grievances make no mention of his life being in danger, but simply say that he is "being put in harm's way."

4

With regard to the affidavit, the Magistrate Judge pointed out that although Randle said that eight of his grievances were returned unprocessed and so he could go to Step Two, nothing in TDCJ's procedural rules allow unprocessed grievances to be taken to Step Two; rather, the instructions on the Step Two form specifically say that "you may not appeal to Step Two with a Step One that has been returned unprocessed."

The Magistrate Judge further noted that Randle did not claim that he filed a Step One grievance against Wood, either not returned to him or returned unprocessed. Instead, Randle simply alleged that the fact that eight grievances were returned unprocessed between June of 2005 and January of 2006 justified his resorting directly to Step Two. Additionally, even if he had mentioned Wood in one of the unprocessed grievances, such a grievance would not serve to exhaust administrative remedies because it was not filed properly.

The Magistrate Judge stated that Randle's argument that the eight unprocessed grievances somehow justified his resort to Step Two was reminiscent of the prisoner's argument in Woodford that administrative remedies are exhausted when the grievance process is unavailable, for whatever reason. However, this contention was rejected by the Supreme Court. As noted above, Randle could have filed a Step One grievance complaining about Wood and the September 13 incident, but did not do so.

Although TDCJ grievance coordinator Chip Satterwhite stated at the Spears hearing that Randle had exhausted administrative remedies, the Magistrate Judge concluded that this was not dispositive. The Magistrate Judge said that the Court is bound to follow Supreme Court precedent, under which Randle had not exhausted administrative remedies, and Satterwhite's statement does not constitute a legal waiver of the defense, which was properly raised in the motion for summary judgment. See Carbe v. Lappin, --- F.3d ---, slip op. no. 06-40192 (5th Cir., July 5, 2007) (not yet published) (available on WESTLAW at 2007 WL 1934882) (holding that the district court cannot resolve the issue of exhaustion at a Spears hearing without a responsive pleading). In this case, the

Defendant properly raised the issue of exhaustion in his motion for summary judgment, supporting this motion with competent summary judgment evidence.

Finally, the Magistrate Judge said, Randle pointed to the grievance investigation worksheet of the Step Two grievance, which summarized the claims, set out a summary of the fact-finding activity, and gave a suggested response. However, the worksheet did not show that Randle had properly exhausted the administrative remedy procedure. The Magistrate Judge therefore recommended that the motion for summary judgment be granted and that the lawsuit be dismissed with prejudice for failure to exhaust administrative remedies.

Randle filed objections to the Magistrate Judge's Report on July 25, 2007. In his objections, Randle says first that he exhausted all the remedies available to him, as shown by Satterwhite's testimony. As noted above, however, the competent summary judgment evidence shows that Randle did not properly complete the grievance procedure because he improperly raised new issues in a Step Two grievance and he raised these new issues over 15 days after the incident complained of occurred. This objection is without merit.

Second, Randle says that he filed all of his grievances under "life endangerment status" which he says requires an immediate investigation. He states that he proceeded to Step Two with "issues that chronologically related to the facts that are consistent." As stated above, neither Randle's Step One grievance nor his Step Two appeal specifically say that his life is in danger. Furthermore, Randle does not indicate that anything prevented him from filing a timely Step One grievance regarding the September 13 encounter with Wood, which would have been the proper method of exhausting administrative remedies on this claim. Although Randle says that his life was in danger, he does not explain why he waited over 30 days after the incident in which to raise his claims regarding Wood for the first time in a grievance, which was the Step Two appeal rather than a new Step One grievance, which would have been the proper procedure. This objection is without merit.

6

Third, Randle says that he filed grievances "under duress and retaliation" and makes an oblique reference to a "checklist" which must be maintained in the unit grievance filed. This objection does not show that Randle properly exhausted his administrative remedies and is without merit.

Next, Randle says that he filed grievances alleging that his life was in danger because of the actions of Doyle Wood, and that the grievance department allowed Wood to investigate these grievances. The response to the Step One grievance indicates that Wood conducted an investigation which did not substantiate Randle's allegations; however, the Step One grievance did not even name Wood, but merely referred to "a lieutenant." Even if Wood improperly investigated Randle's Step One grievance, which grievance specifically complained only about Sgt. Hill, Randle has not shown that this is tantamount to exhaustion of administrative remedies concerning his claim against Wood. Randle had the option of filing a Step One grievance complaining about Wood's actions on September 13, but did not do so. This objection is without merit.

Fifth, Randle appears to say that his Step Two appeal was "consistent with all issues" and that it was processed on the merits. In fact, as the competent summary judgment evidence shows, the Step Two appeal complained of incidents which occurred after the Step One grievance had been filed. The fact that the Step Two appeal was not returned unprocessed does not change the fact that Randle did not properly follow the grievance procedures, in that he raised new issues in a Step Two appeal and raised issues for the first time outside of the TDCJ time limits. Randle could have filed a Step One grievance on the September 13 incident, and cannot use a Step Two appeal filed on October 17 as a substitute for a Step One grievance for that incident. This objection is without merit.

Finally, Randle says that he suffered an injury which required immediate medical attention and reported it to Sgt. Kelly, and that he filed a Step One grievance. A review of Randle's grievances shows that on September 28, 2005, he filed a Step One grievance (no. 2006019899) complaining about a disciplinary case he received. On September 29, 2005, he filed a Step One

7

grievance (no. 2006029507) complaining about the unit classification committee demoting him in custody level. These are the only Step One grievances filed by Randle between September 13 and October 1, 2005, which were appealed to Step Two; neither of them satisfies the exhaustion requirement in this case, nor do they mention the September 13 incident in any way. Randle's objection on this point is without merit.

The Court has conducted a careful *de novo* review of the pleadings and documents in this case, including the plaintiff's complaint and testimony, the Defendant's motion for summary judgment, the Plaintiff's response thereto, the competent summary judgment evidence, the Report of the Magistrate Judge, the Plaintiff's objections thereto, and all other pleadings, documents, and records in the case. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court. It is further

ORDERED that the Defendant's motion for summary judgment (docket no. 37) is GRANTED and that the above-styled civil action be and hereby is DISMISSED with prejudice. It is further

ORDERED that any and all other motions which may be pending in this action are hereby DENIED.

**SIGNED this 10th day of August, 2007.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE